IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL CASE |
| v.   : | |
| : | No. 1:15-CR-115 (ELR) |
| JOHN KILL : | |
| _____: | |

DEFENDANT'S SENTENCING MEMORANDUM

Jeffrey L. Ertel
State Bar No. 249966

FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street
Suite 1500
Atlanta, Georgia 30303
(404) 688-7530
jeff_ertel@fd.org

COUNSEL FOR MR. KILL

TABLE OF CONTENTS

I.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Jack comes from humble beginnings. . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    The Kill children are instilled with core values. . . . . . . . . . . . . . . . . 3

      C.    Jack, a devout Catholic, truly lives his faith. . . . . . . . . . . . . . . . . . . 3

      D.    Jack is dedicated to helping those in need. . . . . . . . . . . . . . . . . . . . . 4

      E.    Jack is a dedicated husband, father and family man. . . . . . . . . . . . . 5

            1.    Jack considers those in need to be his family. . . . . . . . . . . . . 6

      F.    Jack as a solid businessman. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    Jack made a horrible, but not malicious decision. . . . . . . . . . . 9

III.   A sentence of probation with a significant period of home confinement is reasonable and is in the best interest of all involved. . . . . . . . . . . . . . . . 10

      A.    History and character of the Jack Kill mitigate in favor of a restrictive probationary sentence. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      B.    The nature of the offense mitigates in favor of a probation sentence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.    Jack Kill is personally deterred and a restrictive probation sentence would promote respect for the law and provide societal deterrence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      D.    There is no need to protect society. . . . . . . . . . . . . . . . . . . . . . . . . 14

      E.    Probation would allow Jack Kill to make restitution to the victims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.   Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*UNITED STATES v. JACK KILL*, 1:15-CR-115 (ELR)

INDEX TO EXHIBITS

1. Letter from Bridgete Bowman
2. Letter from Genevieve Bowman
3. Letter from Genna Bowman
4. Letter from Jonathan Kallensee
5. Letter from Timothy von Gal
6. Letter from Melissa Hodges
7. Letter from Joan Kill
8. Letter from J.P. Kill
9. Letter from Daniel Kill
10. Letter from Christy Kill
11. Letter from Ken Hodges
12. Letter from Gary Kill
13. Letter from Gerald Barnes
14. Letter from Hank Kalb
15. Letter from Joan McIvor
16. Letter from Reverend Edward Krise
17. Letter from Pierre Jacques
18. Letter from Edward and Mary Schmitt
19. Letter from Paul Duffy
20. Letter from Dozie Bowen
21. Letter from Rev. Msgr. R. Donald Kiernan

Letters re: St. John's Scholarships

22. Eric Hoffman (2002)
23. Jodi Will (2004/2005)
24. Jill Dancer (2002)
25. Jill Dancer (2005)
26. Jenna Dancer (2005/2006)
27. Jenna Dancer (undated)
28. Nick Dancer (2003)
29. Michael Betz (2003)
30. Marcie Klauss (2001)

31. Letters from Missionaries of Charity

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE |
| v. | : | |
| | : | No. 1:15-CR-115 (ELR) |
| JOHN KILL | : | |
| _____ | : | |

DEFENDANT'S SENTENCING MEMORANDUM

*"People are more than the worst thing they have ever done in their lives."*
Sister Helen Prejean

*"No one on our team is interested in Jack Kill being incarcerated . . . Putting Jack in prison will not help any of us, but allowing him to work and repay us does."*
Victim, Petrol Holdings, LLC Members

**I.  Introduction**

Jack Kill is a sixty four year old father of three, grandfather (by blood) to four and by action to countless others. But for thirteen months of those sixty four years[1], Jack Kill led not only a law abiding life, but a life that exemplified the "American Dream", a life dedicated to and influenced by tremendous faith, a life of devotion to family and friends, and a life of serving to those in need. In short, 98.4% of Jack Kill's life exemplified what all would describe as the perfect role model. This Court

---

[1] Thirteen months is 1.6% of sixty four years.

1

has the difficult task of determining the appropriate punishment for this crime and, more importantly, for this man. After examining the body of work that is Jack Kill's life, examining the factors outlined in 18 U.S.C. § 3553, and considering the equities involved, this Court should vary below the advisory Guidelines and impose a term of probation with an extensive period of home confinement. Such a punishment would allow Mr. Kill to work to repay those who he has financially harmed while at the same time impose severe restrictions on his freedom and thereby meting out a reasonable sentence that would give affect to all of the appropriate sentencing considerations.

## II.     Background

### A.     Jack comes from humble beginnings

Jack Kill was the first of six children born to John and Felicitas (Woody) Kill. The Kills lived modest, faith based and hardworking lives in the small town of Delphos, Ohio. John Kill Sr., worked his entire adult life as a milkman delivering milk in and around Lima, Ohio. He worked hard, having only Sundays and Christmas as days off each year. Woody was a stay-at-home mom who worked hard to raise six children on her own. The eight Kills lived in a small, 1,058 sq. foot home that John Kill and his brother built with $5,100.00, John borrowed from his sister. The elder Kills, being devoted Catholics, sent each of the children to Catholic school and insisted the children attend mass weakly.

### B. The Kill children are instilled with core values

The elder Kills's work ethic and faith were passed on to their children like valued family heirlooms. Jack, Kenny, David, Gary, Ron and Diane, have all had successful careers in their own right. Jack, because of God-given ability, and a tremendous dedication to maximizing that ability, was a highly recruited high-school basketball star who was given a scholarship to the University of Dayton. Consequently, Jack was the only of the Kill siblings who attended college. But the work ethic was clearly ingrained long before college as he has been reported to have practiced for hours each day shooting hundreds of shots to hone his basketball skills. As a result, Jack became a starter on the varsity basketball team as a sophomore.

Kenny, Gary and Diane work as machinists in the Delphos area; David recently retired after a thirty plus year career with the post office; and Ron, after co-owning a machine shop with his brother Jack for approximately seven years, has become a supervisor for Honda (he also teaches adult education in Lima, Ohio).

### C. Jack, a devout Catholic, truly lives his faith

In his junior year at the University of Dayton, Jack Kill met Joan Raphel, the woman who has now been is wife for thirty nine (39) years. She describes him as "kind, sweet, humble, thoughtful, protective, spiritual, honorable, generous, smart and handsome" even as a young twenty two year old man. Even as a high profile college athlete, Jack carried his faith close to his heart, attending mass each day.

3

### D. Jack is dedicated to helping those in need

Jack began a life of giving in college when he volunteered at a local orphanage and mentored a troubled youth named Hot Rod. Faith and giving of himself are traits that have traveled with Jack throughout his life and as the letters that are attached to this memorandum as well as the testimony of those who will speak at sentencing will attest. Jack has worked with the Missionaries of Charity nuns who care for and minister to poor women with terminal illnesses, namely AIDS patients. Jack is their gardener, maintenance man, errand boy, relief worker and their benefactor. He helped start a program where the nuns would feed the homeless in the Atlanta area. Moreover, Jack exposes and enlists others to help those in need as attested to by his daughter, son-in-law and brother who he insisted accompany him on missions to feed the poor. As a result of his hard work and partnership with the nuns, hundreds of homeless people have been fed each month since 2001.

When Jack graduated college and started his successful career, he did not forget his humble beginnings. He routinely has donated money for scholarships for underprivileged youths to attend his alma matter, Delphos - St. John's. As Nicholas Dancer, now a successful businessman in Ft. Wayne, Indiana, recounts, there were two schools in Delphos, with St. John's being the one that put a premium on excellence and faith. Jack's generosity was indeed "a miracle" to a number of families. As Nicholas Dancer's mother, wrote to Jack, "you have taught my three children an

invaluable lesson. You have shown them how someone who doesn't even know us can care enough to change everything. . . My wish is that someday our children will make a difference in someone's life like you have in ours."

### E.  Jack is a dedicated husband, father and family man

Jack is also a devoted family man who defines his family very broadly. His sons and daughter both attest to his willingness to give of himself to coach their teams, to assist them with their homework or any other aspect of their development. As Joan describes, "he was involved in absolutely every aspect" of their children's lives. He is also extremely dedicated to Joan, who because of various health related issues (including breast cancer and chronic back problems) has not worked outside the home, and very often was unable to do any of the work around the home. As she describes, "Jack wore many hats in our family." He took care of the kids, cooked, did yard work, vacuumed, moped floors, ironed, made beds," all the things Joan could not do. This on top of managing a successful career.

Moreover, their youngest son, Daniel, was diagnosed with ADHD and sever dyslexia. Once again, Jack the devoted father, worked with Daniel extensively helping him learn how to read. As Jack's son, J.P relates, "my dad was incredibly patient and compassionate in working with Daniel . . . on a daily basis to reach his full potential. After a difficult childhood, Daniel has become a confident man and successful in his own right and there is no doubt that my dad's patience, sympathy, and guidance are

5

major reasons for this outcome." Ultimately, Joan and Jack raised their three children in the same house they have lived in for over thirty years. By all standards, they have been successful parents with J.P being a U.S. Diplomat, Melissa a news anchor in Albany, Georgia and Daniel, who works as a distributor.

### 1.     Jack considers those in need to be his family

As noted earlier, Jack has a broad definition of his family. It was not uncommon for Jack to take in others as if they were his blood relatives. For instance, one of Daniel's friends, Darwin Irby, who never knew his father and by all accounts was on the verge of heading down the wrong path, was taken in by Jack and Joan during his senior year of high school. Darwin not only stayed in school, he graduated from Georgia State. Another of Daniel's friends, Keith Stanton, who also did not have a relationship with his father, and whose mother lived in hotel rooms, was potentially at risk. Jack offered to take Keith in while he finished high school and to take care of him while he attended college.[2]

Jack has also ministered and assisted financially, the Juarez family (single mother and three children) in Clayton County. He often paid their bills when they could not. He routinely invited the Juarez's to his home for holidays, and even assisted them when one of the daughters was being pressured to join a gang. Initially,

---

[2]Keith's father stepped in and attempted to establish a relationship and Keith went to live with him in Mississippi.

6

Jack, like he did with other troubled youths, offered to have the child live with them and complete high school in a school not infected with gangs.  Ultimately, Jack worked with the Church to move the family out of the troubled school district and remove the child from harms way.

When  Joan's sister, Genna Bowman's husband left her and her two girls, a three month old and four year old, she knew that as a single mother she would need the help of family.  Knowing Jack for two decades, she called him and he immediately flew to Miami to meet her and drive her and the girls back to Georgia where she had decided to live.  Jack, without hesitation, insisted that Genna and the girls (Bridgette and Genevieve) move in with them until Genna could get on her feet.  As Genna describes, Jack filled a void acting as a positive male role model to girls who no longer had a father figure in their lives.  Genna recalls how "Jack attended every dance recital, graduation, coached basketball for Genevieve, filled in at 'Doughnuts for Dads'" and took the girls to religious education classes.

Jack's selflessness was not lost on the girls either.  Now eighteen and twenty two years old, the girls recall how Jack Kill, "Uncle Jack", impacted their lives and how he treated them as if they were his own. Genevieve describes Jack as "a kind and compassionate man" who, through the way in which he carried himself, "has given me something to strive for when I finally marry.  To look for someone who will be an involved loving husband and father."  Bridgitte, like Genevieve, saw first-hand how

7

Jack has been there not only for his family but for hers. She noticed how much Jack showed his love and respect for Joan and through his actions has shown her "how a husband should act." She too "can proudly say that I will be looking for the qualities my Uncle has in the men I meet."

Jonathan Kallensee, Joan's nephew, tells a familiar but telling tale about Jack Kill. Jonathan's father and Jack were close friends and Jonathan, then living in Charlotte, was transferred to Atlanta. The year Jonathan and his family moved Jonathan lost his father to cancer. When the Kallensee family got to Atlanta, they "spent so many nights over at Jack's house for dinner, hitting the local swimming pool, or catching the Dawgs play on Saturday." As Jonathan notes, from the beginning Jack was there for the Kallensee family and assumed the role as grandfather to Jonathan's children.

### F.  Jack as a solid businessman

For the past twenty five years, Jack Kill has been self employed. In 1990, after the employer he worked for went out of business, Jack formed Appeal Trading wherein he was a sales representative for various Chinese Companies importing castings and forgings into the United States. Also during this time he purchased and ran a machine shop in Delphos with his brother Ron. In 2007, when the economy took a turn for the worse, the machine shop closed and financial difficulties necessitated Jack declare bankruptcy. Rather than opt for Chapter 7 where many of his debts

8

would have gone unpaid, Jack chose Chapter 11 so that he could reorganize and repay his debts.

### 1.     Jack made a horrible, but not malicious decision

After the casting import business failed in 2010, Jack started an insurance business wherein he would obtain insurance policies through larger insurance companies for small trucking companies insuring damage on the vehicle and/or coverage for the loads the company was hauling.[3]  At first he was regularly placing companies with Lloyd's of London, but after a change in underwriters, the company refused to insure the trucking companies Jack was representing.  This is where Jack made a horrible choice.  Rather than informing the trucking companies he could not obtain insurance for them, Jack essentially self-insured them.  Over a fourteen month period, Jack took in approximately five million dollars ($5,000,000.00) worth of premiums and paid out approximately three million five hundred dollars ($3,500,000.00) worth of claims.  Every trucking company that made a claim (at least until the State of Georgia Insurance Commissioner closed the business) was paid.

---

[3]It is important to note that Jack did not obtain insurance for liability. By insuring only for damage and the cost of cargo, the potential claims to be paid were limited.

9

When Jack was arrested, he had approximately seven hundred twenty five thousand dollars ($725,000.00) in cash reserves that were seized.[4]

It is important to note that Jack did not live an extravagant life during the commission of the crime for which he has pleaded guilty. He still lives in the house he and Joan purchased thirty years ago. He and Joan have one vehicle that is valued at approximately twenty thousand dollars ($20,000.00). While he belongs to a country club, it is a club he and Joan have belonged to for many years. The money he took in during the offense was used to pay salaries, and other necessary business expenses (as well as the cash reserve held in the accounts that were seized).

### III. A sentence of probation with a significant period of home confinement is reasonable and is in the best interest of all involved

Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), this Court is no longer constrained by the Sentencing Guidelines. Instead of being obliged to blindly apply the Guidelines as mandatory, this Court is now instructed to *consider* the Guidelines, but ultimately the Court's responsibility is to impose a sentence that is reasonable. A reasonable sentence is one that is sufficient, but not greater than necessary to address the penalogical justifications for punishment embodied by the factors outlined in 18 U.S.C. §3553.

---

[4] Presently, the government is considering applying these seized funds to the restitution to be paid to the victims. At this time, counsel for Mr. Kill is not certain of the government's final position.

There are four penalogical justifications for the imposition of punishment in criminal matters: rehabilitation, deterrence, incapacitation, and retribution. The interplay of these four factors have one goal in mind, to diminish crime. Gordon Tullock, *"The Welfare Costs of Tariffs, Monopolies, and Theft,"* Western Economic Journal, 5 June 1967, pp. 224-32. In practical effect, the factors outlined in 18 U.S.C. §3553 aim to account for these four justifications. When looking objectively at the four justifications for punishment and the sentencing factors enumerated in 18 U.S.C. §3553, it becomes apparent that punishing Jack Kill with imprisonment will not further societal goals.

Among the factors that are critical to determining a reasonable sentence are: (1) the history and character of the defendant; (2) the seriousness of the offense; (3) the need for deterrence; (4) the need to protect society; and (5) the need to make restitution to the victims. *See*, 18 U.S.C. §3553.[5] When examining all of these factors and applying them to the facts of this case, a reasonable sentence is one where Mr. Kill is not incarcerated but is still punished and is forced to repay those who have been financially harmed by his actions. A reasonable sentence is one of probation with a significant amount of home detention, full restitution and community service.

---

[5] In essence, these factors reflect the penalogical justifications for punishment - rehabilitation (history and character of the defendant), deterrence, incapacitation (need to protect society) and retribution (punishment and/or restitution)

11

### A. History and character of the Jack Kill mitigate in favor of a restrictive probationary sentence

As more fully outlined above, Jack Kill is a man of impeccable character. But for a brief period of misguided business behavior, he had led a caring, giving, faith-based existence. For one year of his sixty four years on this earth, Jack Kill was not the role model all who know him believed him to be. His life's body of work demonstrate that rehabilitation is not an issue. He is not in need of rehabilitation. Indeed, he is what we would rehabilitate people to become.

### B. The nature of the offense mitigates in favor of a probation sentence

While the structure of the offense Jack Kill has pleaded guilty to is a classic Ponzi Scheme, it was not devised as one. Rather, the offense conduct was a result of Jack's misguided belief he could somehow continue to insure the small, at risk, companies he had been legitimately insuring before. Believing he could place the policies with other agencies once Lloyd's of London stopped underwriting the policies, Jack thought his stop-gap answer of personally insuring the trucking companies was a good idea. It was not. While it was fraudulent and against the law, what Jack Kill did was not intended to hurt anyone. Indeed, as evidenced by the fact that he paid out over three million dollars in claims, his motive was not malicious. Further, there was no substantial personal profit from the scheme. Jack did not take luxurious vacations, purchase opulent gifts for his wife or children, nor did he upgrade

12

his life-style at all. Rather, he lived in the same house he and Joan had purchased thirty years earlier, and did the same things he had done for years.

### C. Jack Kill is personally deterred and a restrictive probation sentence would promote respect for the law and provide societal deterrence

There are two aspect of deterrence, personal and societal. Personally, Jack Kill has been deterred. This Court can rest assured that once this case is over, Jack Kill will never again be before a court on a criminal matter. The offense conduct, while lasting a little more than one year, is truly aberrant behavior. It is totally out of character with the life Jack led for the previous sixty plus years.

Societal deterrence is a more complex issue. Many scholars believe that punishment does not deter crime. This is a debate that has gone on for years and will probably go on for decades to come. However, at the least societal deterrence is theoretically accomplished when a punishment promotes respect for the law.

In order for a punishment to promote respect for the law it must be proportional to the offense committed. When a punishment it excessive rather than promote respect for the law, it promotes disrespect. Society believes the long-standing axiom, "let the punishment fit the crime." *See also*, *United States v. Cirilo-Munoz*, 504 F.3d 106, 125-26 (1st Cir. 2007), *per curium*, Torruella, Circuit Judge, concurring (disproportionally harsh sentence of twenty seven (27) years for aider and abetter promotes disrespect for the law).

A sentence of imprisonment, given the circumstances and nature of the offense and Mr. Kill would be deemed excessive and promote disrespect for the law. However, a sentence of probation with restrictive terms and conditions would be a sentence society would deem appropriate in the instant case and would thus promote respect for the law.

**D.   There is no need to protect society**

The need to protect society - - incapacitation - - is not an issue in this case. Mr. Kill is not a threat to society. His history demonstrates this. So does his conduct since his arrest. Mr. Kill has cooperated with authorities from the very beginning. When he was arrested he immediately turned over all of the files authorities asked for, explained documents they asked him about, and agreed to plead guilty before an indictment was even obtained. He has met with agents from other jurisdictions who are investigating other individuals and has provided those agents with truthful information (albeit information that will not rise to the level of substantial assistance). Further, he has agreed to meet with and be deposed by lawyers from the United States Attorney's Office, Civil Division to give sworn testimony about his finances, assets and his ability to make restitution.

**E.   Probation would allow Jack Kill to make restitution to the victims**

As victims, the Petrol Holdings members, have noted, no one wants Jack Kill to go to prison. Rather, the victims want to be made whole and the only way that will

14

occur is if Jack Kill is allowed to work and earn money to pay back those who have been financially harmed. Jack Kill is sixty four (64) years old. He only has so many productive years left. He has attempted to re-start his import business in the hopes of generating the income necessary to pay back the victims in this case. Like when he declared bankruptcy in 2007, he intends on paying back all that he owes. Everyone who knows Jack Kill is very disappointed in him but they know he will do what ever it takes to "make it right." In other words, if allowed to remain out of prison, he will work and pay all of the restitution ordered by this Court thereby doing what he can do to make the victims whole.

## IV. Conclusion

This Court is routinely given the unenviable task of sentencing people to prison. Not to long ago, a mathematical calculation definitively determined an individual's fate. That is no longer the case. Now this Court has broad discretion to fashion a sentence that serves the defendant, the victims and society. Here the Court has compelling evidence of the long-standing good character of Jack Kill. More than forty people have submitted letters of support or offered testimony in person or via video. Rarely does a court have this kind of outpouring of support for a criminal defendant. That outpouring speaks volumes about the man Jack Kill is and will continue to be. This Court can do justice for society, the victims, Jack Kill and his family by exercising its discretion and imposing a sentence of five (5) years probation with two

years of home confinement (and, if deemed appropriate, location monitoring paid for by Mr. Kill), full restitution and extensive community service. Such a sentence is sufficient but not more than necessary to give affect to the factors outlined in 18 U.S.C. §3553. Such a sentence is reasonable.

Dated, this the 20th day of August, 2015.

Respectfully submitted,

*s/Jeffrey L. Ertel*
JEFFREY L. ERTEL

Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
(404) 688-7530
jeff_ertel@fd.org

COUNSEL FOR MR. KILL

Federal Defender Program, Inc.
101 Marietta Street, N.W.
Suite 1500
Atlanta, Georgia 30303
(404) 688-7530; Fax (404) 688-0768

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the forgoing on counsel for the Government electronically and by hand delivery at the following address:

    Nathan Kitchens, Esq.
    Asst. United States Attorney
    6th Floor
    Richard B. Russell Building
    75 Spring Street
    Atlanta, Georgia 30303

Dated, this the 20th day of August, 2015.


                    *s/Jeffrey L. Ertel*
                    Jeffrey L. Ertel